## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALVIN SCHIRO** | **CIVIL ACTION** |
| **VERSUS** | **NO:  13-1156** |
| **OFFICE DEPOT, AETNA LIFE INSURANCE COMPANY, AND SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.** | **SECTION: "S" (2)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #32) is **GRANTED**, and this matter is **REMANDED** to the plan administrator for consideration of the opinions of Dr. Truax and Dr. Fautheree.

**IT IS FURTHER ORDERED** that Office Depot and Sedgwick Claims Management Services's Motion for Summary Judgment (Doc. #33) is **DENIED**.

### BACKGROUND

This matter is before the court on cross-motions for summary judgment filed by plaintiff and defendants.  The parties agree that there are no disputed issues of material fact, and each argues that it is entitled to summary judgment in its favor.

Plaintiff, Alvin Schiro began working for defendant, Office Depot on November 17, 1997, and eventually became the manager of the Office Depot store in Slidell, Louisiana.  The working conditions and physical demands of an Office Depot store manager are:

> Must be able to read, count, and write to accurately complete all documents.
>
> Must be able to operate all equipment necessary to run the store.
>
> Must be able to freely access all areas of the store including selling floor, stock and register areas.

Must be able to climb a ladder.

Must be able to move or handle merchandise throughout the store generally 0-50 pounds.

Must be able to work varied hours/days to oversee store operations.

As an Office Depot employee, Schiro was covered by Office Depot's self-insured short-term disability insurance, which was administered by defendant, Sedgwick Claims Management Services, Inc.

In December 2011, Schiro sought medical treatment for "flu-like symptoms," and was diagnosed with an umbilical and ventra hernia and associated problems of his stomach lining. He underwent surgery on January 18, 2012. Schiro was out of work from December 15, 2011 to February 13, 2012, and Sedgwick approved his medical leave of absence and short-term disability benefits claim.

Thereafter, Schiro experienced additional medical issues. On April 18, 2012, an x-ray revealed a total blockage of his colon, and he was admitted to the hospital for emergency surgery. Schiro was treated for an infection for seven days in the intensive care unit, and an additional three days in a regular hospital room. On April 24, 2012, Sedgwick was notified of Schiro's short-term disability claim associated with this surgery. On April 27, 2012, Sedgwick notified the Office Depot human resources manager that Schiro's claim would be denied if the medical documentation was not received by May 10, 2012. Schiro's surgeon certified his disability though June 12, 2012. However, on May 21, 2012, Sedgwick approved Schiro's short-term disability claim from April 18, 2012 through May 30, 2012, because their guidelines indicated that it should end on May 30, 2012, rather

2

than the doctor's recommended date of June 12, 2012.  The Sedgwick claims adjustor's May 22, 2012, notes state that Shiro "may have post-op complications which may pose for a longer recovery time.  However 6/13/12 does not seem unrealistic given [Shiro's] heavy job demands and nature of the surgery."

While recovering from the April 18, 2013, surgery, Schiro developed back pain and his surgeon referred him to neurologists, Dr. Walter D. Truax and Dr. Gregory L. Fautheree.  On June 1, 2012, the surgeon informed Sedgwick that Schiro would see a neurologist.

On June 11, 2012, Dr. Truax wrote Schiro's surgeon to inform him that he examined Schiro, and Schiro had some limited forward flexation, complained of some back pain, had diminished senseation to pinprick over the distribution of left lateral femoral cutaneous nerve, symmetric reflexes and normal strength.  Dr. Truax opined that Schiro had meralgia paraesthentica.  He ordered an electromyogram ("EMG") of Schiro's left leg and x-rays of his spine.  Schiro said that he could not work, and Dr. Truax "said that was fine," and he could "stay off work for the time being."

On June 14, 2012, a registered nurse examiner at Sedgwick reviewed Schiro's claim "to determine if the medical information presented substantiates potential extension as requested certification period extends beyond" the guidelines.  The nurse reviewed Dr. Truax's file, and noted that Schiro has "stinging burning pain associated with numbness" and that the "[p]hysical exam indicates that [Schiro] has some limited forward flexation, that he complains of some back pain, and that he has diminished pinprick over the left lateral femoral cutaneous nerve."  The nurse notes that Schiro's reflexes and strength are normal and that the doctor ordered an EMG and x-ray.  The nurse concludes:

> Given there is no indication that [Schiro] is unable to ambulate, requires an assistive device, or that there are any other limitations, [the] medical information available does not support that [Schiro] would be unable to perform his essential job functions at this time. [Schiro's] job as a store manager has a moderate to heavy physical demand but [the] medical information available does not support severity that [he] would be unable to perform his job functions. [Schiro's] reports of being unable to do his job are not in themselves disabling.

On July 9, 2012, Dr. Truax noted on Schiro's chart that his EMG was normal, and that the magnetic resonance imaging ("MRI") scans showed multilevel degenerative disc disease. Dr. Truax attributed the burning over Schiro's left anterolateral thigh to meralgia paraesthetica. Dr. Truax prescribed Neurontin, and scheduled a follow-up appointment. Schiro asked Dr. Truax if he could work. Dr. Truax said that it was Schiro's choice, and Schiro indicated that he could not work, which Dr. Truax said was "fine."

On July 10, 2012, Dr. Truax completed a Sedgwick form stating that Schiro is unable to return to work until further notice.

On July 16, 2012, Sedgwick denied Schiro's claim for short-term disability benefits beyond May 30, 2012. Sedgwick stated that the "medical information provided did not support continuing disability," because "there was no objective medical evidence in the claim file to support disability beyond 05/31/2012." Sedgwick noted that Schiro's EMG was normal, and that the MRI scans showed degenerative changes, but that the reports were not available for review. Further, Sedgwick notes that Schiro requested to stay off of work and Dr. Truax agreed.

On July 19, 2012 and on July 23, 2012, the Sedgwick claims adjustor spoke with "Tyrie," an otherwise unidentified employee at Dr. Truax's office by telephone. Tyrie stated that Dr. Truax signed the paperwork stating that Schiro was disabled, but the doctor "does not feel" that Schiro was

disabled.  Tyrie also stated that Schiro could not return to work until he saw Dr. Truax on August 21, 2012.

On July 23, 2012, a registered nurse examiner at Sedgwick again reviewed Schiro's claim. The nurse concluded that the "[m]edical information does not substantiate extension of disability at this time" because "there is no indication that [Schiro] is unable to ambulate, requires an assistive device, or that there are any other limitations."

On July 24, 2012, Sedgwick informed Office Depot that Schiro's claim for short-term disability from May 31, 2012 through the present was denied because "[t]he medical did not support ongoing disability for the requested extension of short-term disability."

On August 21, 2012, Dr. Truax made a note to Schiro's chart indicating that Schiro had limited lumbar range of motion, and back pain with straight leg rasing.  He also had diminished sensation in the distribution of the lateral femoral cutaneous nerve of the thigh on the left, but his reflexes were symmetric and strength was normal.  Dr. Truax's impression was that:

> [Schiro] has lateral femoral cutaneous neuropathy on the left and/or a lumber radiculopathy or a combination thereof.  The pain came on after his abdominal surgery which is not unusual.  He has had a normal EMG.  His MRI scan shows multilevel degenerative disc disease with some degree of spinal stenosis.  The L5-S1 level is most affected and the two levels above it are affected as well.
>
> I have asked him to see Dr. Seve Rynick for epidural steroid injections.  He sometimes will also block the lateral femoral cutaneous nerve should it seem appropriate.  In my opinion he continues to be disabled.  Hopefully this will be just a short term issue.  I think he will probably be out for at least an additional month or six weeks.

On September 21, 2012, Dr. Fautheree completed a Certification of Health Care Provider for Sedgwick stating that Schiro was unable to work pending treatment and that he would be incapacitated from August 23, 2012 through November 15, 2012.

On October 16, 2012, Dr. Charles Brock, a Board Certified Neurologist, reviewed Schiro's file on Sedgwick's behalf in connection with Schiro's appeal of the denial of his claim for short-term disability benefits after May 30, 2012.  Dr. Brock opined that:

> The available medical records do not demonstrate a formal Functional Capacity Evaluation with demonstrated validity measures in support of inability to carry out his vocation.  There is no demonstrated focal weakness, numbness, abnormality of coordination, cranial nerve function or cognition that would support an inability to carry out his material job duties.
>
> RATIONAL:  The available medical records describe a condition of meralgia paraesthentica with associated pain, and MRI evidence of degenerative disc disease, however from a neurologic perspective; there are no demonstrated focal objective abnormalities by physical examination that would support delineation of restrictions and limitations from any of these physical demand requirements of his vocation.  While the numbness is present per exam, it does not support inability to perform his vocation or support restrictions or limitations.  There is no demonstrated formal Functional Capacity Evaluation with demonstrated validity measures in support of inability to carry out his vocation.  There is no indiction of specific side effects from medications with demonstrated severity in ongoing duration in support of inability to carry out vocation.  From a neurology perspective, the employee is not disabled from the material and substantial duties of his regular occupation as of 05/31/12 to return to work.

On October 26, 2012, Sedgwick informed Schiro that his appeal was denied.  Sedgwick stated that Dr. Brock reviewed Schiro's medical records and determined that he is not disabled because the medical information in the file does not support an inability to perform the occupation.

On November 8, 2012, Dr. Fautheree completed documentation stating that Schiro had a physical impairment that substantially limited a major life activity, and that he was unsure how long the symptoms would persist.  Dr. Fautheree stated that Schiro would not be able to return to work without limitations on lifting, standing, walking, pushing and pulling for an indefinite time.

On February 19, 2013, Schiro's attorney requested that Sedgwick re-review Schiro's claim. Sedgwick replied that Schiro completed all allowable appeals under the terms of the plan and that Schiro had the right to bring a claim under Section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA").

On April 18, 2013, Schiro filed this action seeking a reinstatement of his past short-term disability benefits, and an award of attorneys' fees, costs, damages and pre and post judgment interest against Office Depot and Sedgwick.

## ANALYSIS

### A.   ERISA Standard of Review

A person denied benefits under an employee benefit plan covered by ERISA may challenge that denial in federal court. 29 U.S.C. § 1132(a)(1)(B).  When deciding whether to pay benefits, a plan claims administrator makes two general decisions: (1) a finding of facts underlying the claim; and, (2) a determination of "whether those facts constitute a claim to be honored under the *terms* of the plan." Schadler v. Anthem Life Ins. Co., 147 F.3d 388, 394 (5th Cir. 1998) (quoting Pierre v. Conn. Gen. Life Ins. Co./Life Ins. Co. of N. Am., 932 F.2d 1552, 1557 (5th Cir. 1991)) (emphasis in original).

The district court applies an abuse of discretion standard to its review of the plan administrator's first decision, his or her findings of facts underlying the claim. Myers v. Kodak

7

Health Imaging Sys. Long-Term Disability Plan, 177 F.3d 978, 1999 WL 197136, at *3 (5th Cir.
1999) (citations omitted).  "Abuse of discretion review, as applied to an administrator's factual
determinations, 'is limited to determining whether there is substantial evidence in the record to
support [the plan administrator's decision].'" Id. (quoting Bellaire Gen. Hosp. v. Blue Cross Blue
Shield, 97 F.3d 822, 828 (5th Cir. 1996)).  This type of review also be characterized as "arbitrary and
capricious" review. Id. (citations omitted).  Generally, a court determines abuse of discretion based
upon the information known to the plan administrator at the time the decision is made, but the plan
administrator can abuse his or her discretion if he or she fails to obtain necessary information.[1] Salley
v. E.I. DuPont de Nemours & Co., 966 F.2d 1011, 1015 (5th Cir. 1992).

**B.     Sedgwick's Findings of Fact Underlying the Claim**

Sedgwick abused its discretion in determining the facts underlying Schiro's claim for short-
term disability benefits from May 31, 2012 through November 15, 2012, because it ignored the
treating physicians' written findings regarding Schiro's ability to work.  Sedgwick's nurse examiner,
Dr. Brock and Sedgwick's benefits denial letters state that Schiro's file lacked "objective medical
evidence" of his inability to work.  The plan defines "objective medical evidence" as "evidence that
establishes facts and conditions, as perceived without distortion by personal feelings, prejudices or
interpretations, and shall include x-rays, quantative tests, laboratory findings, data, records, **reports
from the attending Physician and reports from a consulting Physician**." (emphasis added).  The
administrative record contains four written entries from Dr. Truax dated June 11, 2012; July 9, 2012;

---

[1] If the plan administrator has discretionary authority to make claims decisions and is also
responsible for paying the benefits under the plan it operates under a conflict of interest, and the conflict is
considered in evaluating whether the plan administrator's decision was an abuse of discretion. Firman v. Life
Ins. Co. of N. Am., 684 F.3d 533, 539 (5 th Cir. 2012).  In this case, Sedgewick was the plan administrator
and Office Depot paid the claims.  Therefore, there is no conflict of interest to consider.

July 10, 2012; and, August 21, 2012, indicating that Schiro could not work. There are two entries in the record (July 19, 2012, and July 23, 2012) regarding alleged telephone calls between the claims adjustor and "Tyrie," an otherwise unidentified employee at Dr. Truax's office, wherein Tyrie stated that Dr. Truax does not think that Schiro is disabled despite his having signed paperwork stating the contrary. These supposed telephone calls are not substantiated and not supported by the documentation from Dr. Truax's file. The administrative record also includes two written entries from Dr. Fautheree stating either that Schiro could not work (September 21, 2012) or could not work without restrictions (November 8, 2012). Sedgwick ignored the doctors' written statements and instead relied on the opinions of its registered nurse examiner and Dr. Brock, neither of whom personally examined Schiro, and an unsubstantiated telephone call with someone in Dr. Truax's office. Further, Sedgwick rendered its decisions immediately after receiving the opinions of the nurse examiner and Dr. Brock and did not consider Dr. Fautheree's November 8, 2012, statement which was submitted after Sedgwick denied Schiro's appeal in October 2012.

Sedgwick maintains that Schiro's file does not contain objective medical evidence of disability, but ignores the attending physicians' reports, which the plan includes in its definition of objective medical evidence. The evidence upon which Sedgwick relies, the opinions of the registered nurse examiner and Dr. Brock, and the claims adjustor's telephone conversation with Tyrie, are not substantial evidence to support Sedgwick's finding that Schiro was not disabled from May 31, 2012 through November 15, 2012, in light of the treating physicians' multiple statements that Schiro was disabled. See Salley, 966 F.2d at 1015 (relying on opinions of medical professionals who have not examined the claimant may constitute an abuse of discretion). Sedgwick abused its

discretion in determining the underlying facts and denying Schiro's claim.  Therefore, Shiro's motion

for summary judgment is GRANTED, and defendants' motion for summary judgment is DENIED.

**CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #32) is

**GRANTED**, and this matter is **REMANDED** to the plan administrator for consideration of the

opinions of Dr. Truax and Dr. Fautheree.

New Orleans, Louisiana, this  27th  day of January, 2014.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**